UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EDNER BATAILLE,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>SPOKANE FALLS COMMUNITY COLLEGE, Community Colleges of Spokane,<br><br>　　　　　　　　Defendant. | NO: 11-CV-0442-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

　　　BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 29). This matter was heard without oral argument on November 26, 2012. The Court has reviewed the relevant pleadings and supporting materials, and is fully informed.

///

///

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

Plaintiff Edner Bataille ("Bataille"), a pro se litigant, alleges Defendant Spokane Falls Community College ("SFCC")[1] violated Title VII of the Civil Rights Act of 1964 by discriminating against him on the basis of race and national origin. ECF No. 1. Presently before the Court is SFCC's Motion for Summary Judgment on all claims on the grounds that Bataille failed to exhaust his administrative remedies.[2] ECF No. 29.

---

[1] Community Colleges of Spokane ("CCS") is part of the seventeenth district of community colleges created in Washington state. See Wash. Rev. Code § 28B.50.040(17); Wash. Admin. Code § 132Q-01-006. SFCC is one of the two community colleges in the CCS. ECF No. 31 at 2 n.1. Bataille appears to bring his claim against SFCC and CCS as one Defendant. For the purposes of this Order, the Court will refer to the Defendant as SFCC.

[2] Bataille's response to SFCC's motion appears to indicate that he is responding to an "Order" by the Court that he must file a response to: (1) "Motion to Dismiss for violating Fed. R. Civ. P. 56 and LR 56," and (2) "a Response to the Defendant's October 4, 2012 Motion for Summary Judgment under Rule 56." ECF No. 36 at 1. The Court presumes Bataille is responding to the "Notice to Pro Se Litigants of the Summary Judgment Rule Requirements" outlining the requirements for a pro se litigant to respond to a dispositive motion (motion to dismiss or motion for

FACTS

Bataille was employed as a probationary tenure track professor at SFCC between September 18, 2008 and August 20, 2010. Defendant's Statement of Material Facts, ECF No. 32 ("Def. SOF") at ¶ 2. Bataille's quarterly reviews in Fall 2008, Winter 2009, and Spring 2009 were satisfactory. *Id*. at ¶ 4. However, in Fall 2009, Bataille received a "steps for improvement required" rating in several areas of performance, and on December 7, 2009 Bataille was given a performance improvement plan ("PIP") from the tenure committee. *Id*. at ¶ 5-6. The PIP stated in bold print that if the performance deficiencies were not corrected, the tenure committee would recommend denial of tenure. Stevens Decl., ECF No. 34, Ex. D. Bataille again received a rating of "steps for improvement required" in several areas of performance on his quarterly reviews in Winter and Spring of 2010. Def. SOF ¶ 8.

On June 7, 2010, the tenure committee recommended that Bataille be denied tenure. ECF No. 34, Ex. E. On June 3, 2010 Bataille signed his most recent Performance Evaluation Report which indicated that the tenure committee recommended "non-tenure." *Id*. at Ex. C. On July 12, 2010, Bataille sent a letter to

---

summary judgment). For clarification purposes, the Court did not issue an Order for Bataille to respond to any motion. Further, the only motion pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 29).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1  Human Resources attempting to negotiate terms for his resignation. *Id*. at Ex. F.

2  Human Resources at SFCC rejected Bataille's terms and informed Bataille that the

3  "SFCC's recommendation for the denial of [his] tenure will be placed before the

4  Board of Trustees at its July 20 regular scheduled business meeting." *Id*. at Ex. G.

5  The letter also informed Bataille that he had a right to speak at the Board meeting

6  prior to action being taken. *Id*.

7        On July 20, 2010 the Board of Trustees met and voted to deny Bataille

8  tenure. Def. SOF at ¶ 13.  Bataille was present at the meeting.  ECF No. 34, Ex. H.

9  On July 26, 2010, Bataille requested a letter for the purposes of a visa application

10 and indicated that Kimberly Murrell would pick up the document. *Id*. at Ex. J.

11 SFCC drafted a letter stating that "Mr. Bataille is currently employed as an

12 economics instructor for our summer quarter term which began on June 28, 2010

13 and which ends on August 20, 2010.  He will not be employed after the term ends."

14 *Id*. at Ex. I.  On July 28, 2010 this letter was picked up by Kimberly Murrell on

15 Bataille's behalf. *Id*. at Ex. K.  On August 11, 2010 Bataille was sent a letter from

16 the district administration of the CCS stating that the Board of Trustees had taken

17 action denying his tenure on July 20, 2010, and that "this action terminates his

18 employment" effective August 20, 2010.  Stevens Suppl. Decl., ECF No. 38.

19       On February 3, 2011 Bataille filed a complaint with the Equal Employment

20 Opportunity Commission ("EEOC") alleging discrimination on the basis of race

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

1  (African American) and national origin (Haitian), resulting in the denial of tenure

2  and subsequent termination. *Id*. at Ex. L. Bataille's EEOC complaint lists "the

3  latest date discrimination took place" as July 1, 2010. The parties heavily dispute

4  whether Bataille also filed a complaint with the Washington State Human Rights

5  Commission.

6  DISCUSSION

7  **A. Standard of Review**

8  The Court may grant summary judgment in favor of a moving party who

9  demonstrates "that there is no genuine dispute as to any material fact and that the

10 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

11 on a motion for summary judgment, the Court must only consider admissible

12 evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The

13 party moving for summary judgment bears the initial burden of showing the

14 absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

15 317, 323 (1986). The burden then shifts to the non-moving party to identify

16 specific facts showing there is a genuine issue of material fact. *See Anderson v.*

17 *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla

18 of evidence in support of the plaintiff's position will be insufficient; there must be

19 evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

20

1   For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

### B. Failure to Exhaust Administrative Remedies

"A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief." *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972). Specifically, a charge must be filed with the EEOC within one hundred and eighty (180) days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). However, the statutory deadline is extended to three hundred (300) days after the alleged unlawful employment practice occurred, when "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto." *Id*. The relevant state agency in this case is the Washington State Human Rights Commission ("HRC"). See Wash. Rev. Code 49.60.120(4).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1. 300-day extended deadline for filing charges

SFCC argues that there is no evidence that Bataille ever filed a charge against SFCC with the HRC. Laura Lindstrand, the Records Officer at the HRC, declared that the HRC "has no record of a complaint being filed against the State of Washington, Spokane Falls Community College, or the Community Colleges of Spokane by Edner Bataille concerning the subject matter referenced in Mr. Bataille's complaint." Lindstrand Decl., ECF No. 33. Bataille responds that the deadline for filing should be extended to 300 days and offers as evidence "Exhibit A" as a "true and correct copy of the record of Mr. Bataille's dual filing with the EEOC and the Washington State Human Rights Commission." ECF No. 36 at 4.

As an initial matter, the Court finds Bataille's proffered evidence of "Exhibit A" is unpersuasive. ECF No. 36, Exhibit A is a copy of Bataille's charge of discrimination filed with the EEOC. ECF No. 36 at 12. It is clear from the record that Bataille photocopied this document from the Declaration of Greg Stevens in support of SFCC's instant motion (ECF No. 34-1), and included it as support for his own position on this issue. However, the Court finds no indication anywhere in Exhibit A that Bataille filed charges *with the HRC*. Bataille offers no testimony or sworn statement that he filed any claim with the HRC.

Moreover, the Court finds that the cases cited by Bataille to support an extension of the statutory deadline are factually distinguishable from the instant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

case. In each of these cases, a complaint was filed with, or appropriately communicated to, the respective state agency. *See Love*, 404 U.S. at 524 (administrative requirement satisfied when state agency received oral advisement from the EEOC and waived the opportunity to take further action); *Mohasco Corp. v. Silver*, 447 U.S. 807, 810 (1980) (letter to EEOC referred to state agency); *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 113 (1988) (EEOC sent letter to state agency, which waived its right under Title VII to process the charge); *Worthington v. Union Pac. R.R.*, 948 F.2d 477, 478 (8th Cir. 1991) (charge originally filed with state agency then forwarded to EEOC). In stark contrast, Bataille offers no evidence that he filed his charge with the HRC, or that the HRC received any communication from the EEOC that a complaint had been filed.

Thus, the Court finds that Bataille has failed to identify even a scintilla of evidence to support his argument that the deadline for his filing his EEOC complaint should have been extended to 300 days.

    2. <u>180-day time deadline for filing charges</u>

The Court now turns to the issue of whether Bataille filed his charges with the EEOC within 180 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1). As indicated above, this filing requirement acts as a limitations period and failure to file a complaint with the EEOC within this time period bars subsequent action in federal court.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

The Ninth Circuit has held that "[t]he time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985); *see also Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) ("[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the discriminatory act became most painful.").

SFCC relies heavily on the Supreme Court case *Delaware State College v. Ricks* to argue that the 180-day time period began to run when the tenure decision was made and Bataille was notified. *See* 449 U.S. 250, 259 (1980). In Ricks, the College Board of Trustees formally voted to deny tenure to plaintiff Ricks on March 13, 1974. *Id*. at 252. Ricks was informed of the decision to deny his tenure and intent not to renew his contract at the end of the 1974-1975 school year on June 26, 1974. *Id*. at 254. Despite this decision, the College offered Ricks a "terminal" contract to teach one additional year, after the expiration of which, the employment relationship would end. *Id*. at 253. Before the expiration of his "terminal" contract, Ricks filed a complaint with the EEOC alleging discrimination on the basis of national origin, which was accepted on April 28, 1975. The Court held that the applicable statutory period began to run on June 26, 1974, the date

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

Ricks was notified of the decision to deny tenure, instead of the June 30, 1975 date that the "terminal" contract expired. *Id*. at 261-62. The Court found that

> the termination of employment at [the College was] a delayed but inevitable, consequence of the denial of tenure…. In sum, the only alleged discrimination occurred – and the filing limitations periods therefore commenced – at the time the tenure decision was made and communicated to Ricks. That is so even though the effects of the denial of tenure – the eventual loss of a teaching position – did not occur until later.

*Id*. at 257-58.

SFCC argues that the facts of the instant case are "remarkably similar." On June 3, 2010, Bataille acknowledged that he saw a performance evaluation with the "non-tenure" box checked under "tenure recommendation." ECF No. 31 at 8. After receiving a letter proposing terms for resignation from Bataille, the university informed Bataille that the recommendation for denial of his tenure would be heard by the Board of Trustees at its July 20, 2010 meeting. On July 20, 2010 the Board of Trustees voted to deny Bataille tenure and Bataille was present at that meeting. Thus, SFCC argues that similar to *Ricks*, the limitations period began to run on Bataille's EEOC filing on July 20, 2010, when the tenure decision was made and Bataille was notified. *See Ricks*, 449 U.S. at 259. Bataille's filing on February 3, 2011 occurred 198 days after July 20, 2010, and would be time barred under the statute. SFCC further contends that, even if attendance at the Board of Trustees meeting was not sufficient to provide notice to Bataille of the decision to deny tenure, the letter from Human Resources dated July 26, 2010, and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

picked up on July 28, 2010, explicitly stated that Bataille would not be employed after the term ended on August 20, 2010. ECF No. 34, Ex. I. The time period between this notification and the filing of the EEOC complaint on February 3, 2011 is 190 days, also outside of the 180-day statutory deadline.

Bataille argues that he "has filed a Charge of Discrimination for early dismissal, which can only take place at the moment the dismissal occurs, and not prior to that date." [3] ECF No. 36 at 8. Bataille contends that the Board of Trustees merely recommended that his tenure be denied on July 20, 2010, and that the July 26, 2012 letter "was a verification of employment letter destined to immigration

---

[3] Bataille also appears to argue that this case is distinguishable from *Ricks* because Bataille was not offered a "terminal" contract, rather, "the period ending on August 20, 2012, refers to the end date of a contract offered to, and agreed upon by both [SFCC] and [Bataille] prior to the announcement of early termination." ECF No. 36 at 7. While attempting to view all arguments by Bataille in the light most favorable to the non-moving party, the Court does not discern the difference between the arguments by Ricks and Bataille. Both appear to contend that the calculation of the limitations period should begin from the date of termination instead of the date of the decision to deny tenure, which for both plaintiffs appears to be the end date of a contract.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

officers, not a formal communique of the dismissal of the Plaintiff." *Id*. The formal act of dismissal, according to Bataille, did not occur until August 20, 2012, which is less than 180-days from the date the February 3, 2011 complaint was filed with the EEOC.[4] Further, Bataille argues, the formal letter advising him of the termination of his employment was sent on August 11, 2010, also within the 180-day statutory deadline.

Although not cited by Bataille, there is support for this argument in case law. In 2002 the Supreme Court decided *National R.R. Passenger Corp. v. Morgan*. 536 U.S. 101 (2002). *Morgan* was another employment discrimination case, in which some of the alleged discriminatory acts took place within the 300-day limitations period, but many occurred prior to that time period. The Court drew on principles from previous cases including *Ricks*, and found that "discrete discriminatory acts are not actionable if time barred, even when they are related to

---

[4] Although not dispositive on this issue, the Court notes that despite Bataille's argument in his responsive briefing that the date of the discriminatory action should be the "formal notification" of his termination from employment, his charge of discrimination filed with the EEOC lists the earliest and latest dates discrimination took place as July 1, 2010. ECF No. 34, Ex. L. If this date was actually the latest unlawful employment practice, the February 3, 2011 EEOC complaint was filed well outside the 180-day statutory deadline.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Thus, employees are not barred "from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id*.

The Ninth Circuit recently issued a decision reconciling the *Ricks* and *Morgan* lines of authority, and clarifying the circumstances that result in different accrual dates for claims. *Pouncil v. Tilton*, ---- F.3d ----, No. 10-16881, 2012 WL 5871659 (9th Cir. Nov. 21, 2012). The proper factual inquiry is as follows: "does this case involve the delayed, but inevitable, consequence of" the decision to deny Bataille tenure, making Bataille's claims arising from the August 11, 2010 official notice of termination time-barred, or was the letter notifying Bataille of termination an "independently wrongful discrete act [], which began the running of the statute of limitations anew." *Id*. at *12.

Applying this analytical framework to the instant case, the Court finds that Bataille fails to allege that the August 11, 2011 letter officially informing him of his termination, or the August 20, 2011 date that the termination took effect, constituted an independent, discrete discriminatory act that would effectively begin the 180-day time limit anew. *Id*.; *see also Ricks*, 449 U.S. at 257-58 (finding that the only wrongful decision was the denial of tenure, not the actual discharge one

year later).  Contrary to Bataille's assertions in his responsive briefing, the Court cannot discern a specific allegation that the termination itself was a discriminatory act separate and independent from the decision to deny him tenure.  Section V of the Complaint, entitled "Claims," alleges that he was prematurely and arbitrarily denied tenure, and that the decision to deny tenure was discriminatory in violation of Title VII.  ECF No. 1 at 8-9.  Thus, as in *Ricks*, the Court finds that the decision to terminate Bataille's employment was the delayed but inevitable consequence of the decision by the Board of Trustees to deny tenure.

Furthermore, the decision to deny tenure, and the resulting termination, was communicated to Bataille on at least two separate occasions prior to the letter notifying Bataille of his termination sent on August 11, 2011.  First, Bataille attended the Board of Trustees meeting on July 20, 2010 where the Board voted to deny tenure.  Second, Bataille received a letter on or around July 28, 2010 that affirmatively stating that he would not be employed once the term ended on August 20, 2010.  The Court is unpersuaded by Bataille's arguments that the Board's decision to deny tenure was merely a "recommendation," and that the July 26, 2010 letter was not a formal letter of dismissal.  The July 26, 2010 letter explicitly states that Bataille "will not be employed after the term ends." ECF No. 34, Ex. I.  Thus, the Court finds even in the light most favorable to Bataille, as of the July 28, 2010 receipt of the letter indicating his dismissal, the facts supporting

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights. *See Boyd*, 752 F.2d at 414. However, Bataille waited more than 180 days after receipt of this letter to file his charge of the discrimination with the EEOC.

The Court finds as a matter of law that Bataille's February 3, 2011 EEOC complaint was filed after the expiration of the 180-day limitation period that began running on July 28, 2010. Therefore, any subsequent action in this Court is barred for failure to exhaust administrative remedies. SFCC's motion for summary judgment is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 29, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, provide copies to Plaintiff and counsel for the Defendant and CLOSE the file.

**DATED** this 12th day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge